# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| HENRY LEWIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:14-CV-2000 JVB |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Henry Lewis, a *pro se* prisoner, is serving a 45-year sentence for being convicted of burglary and robbery in Marion County Superior Court. *State v. Lewis*, 49A02-0610-CR-921. He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging both his trial counsel and appellate counsel provided ineffective assistance. (DE 1.)

I. BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Lewis's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts surrounding Lewis's offenses as follows:

> Marvin Engelking lived in an apartment located inside a commercial building on East 10th Street in Indianapolis, Indiana. He worked for the building's owner, Victor Demichieli, who operated a business out of the building. The back of the building contained a storage area, which was enclosed by a six-foot-high chain link fence topped with barbed wire, where trucks and other equipment were stored. The gate to the fence was secured by a padlock and chain.
>
> On March 2, 2005, at approximately 9:30 a.m., Engelking returned to the building and discovered the gate to the fence had been "busted open." As soon as Engelking entered the property, he heard the metal door to the

building slam shut. Engelking noticed that a window to the building had been broken. He [ ] ran to the back of the property and saw a man, later identified as Lewis, crawling under a section of fence that had been pried up from the ground. Lewis was dressed in green coveralls and was wearing jersey work gloves. As Lewis stood up, Engelking noticed that he had a bucket of tools and a chainsaw that belonged to Demichieli. Engelking recognized his DeWalt hammer drill on top of the bucket.

Engelking ran after Lewis and followed him down an alley. Because Lewis did not know that he was being followed, Engelking was able to catch up to him and tap him on the shoulder. Engelking told Lewis that he had Engelking's tools, to which Lewis responded that the tools in his possession were not Engelking's. Engelking told Lewis that he had observed Lewis crawling underneath the fence with the tools. Lewis put down the tools and began fidgeting in his pocket as though he had a gun or knife. He then punched Engelking in the face "pretty hard." Lewis swung the chainsaw at Engelking, but Engelking was able to step out of the way. Lewis grabbed a circular saw from the bucket and ran off with both it and the chainsaw. Engelking pursued Lewis, and while doing so, he saw a utility van and asked the driver to call the police. Engelking continued his pursuit and observed Lewis place the two saws into a dumpster. Engelking used his two-way radio to call Demichieli and inform him of the robbery and the location of the saws. Shortly thereafter, the police arrived, and Engelking indicated the direction in which the robber had run.

Indianapolis Police Officer Mark Rand, who arrived to participate in the chase, observed Lewis walk toward another marked police car traveling in his direction and then turn and run away. Because Officer Rand was in a car without overhead lights, he waited until Lewis was within twenty feet of his car before he exited and identified himself as a police officer. Officer Rand asked Lewis to stop so he could talk to him. Lewis immediately turned and ran between two houses. Officer Rand retrieved his police service dog from his police car and began tracking Lewis. They were able to track Lewis to an abandoned house, but the dog lost the scent.

A few days later, Engelking identified Lewis from a photo array as the person who had hit him and taken the items from him and Demichieli. Officer Rand also identified Lewis from a photo array as the person who had run away from him on the day of the crime. The State charged Lewis with burglary as a Class B felony, burglary as a Class C felony, robbery as a Class B felony, criminal recklessness as a Class D felony, and theft as a Class D felony. The State also alleged that Lewis was a habitual offender.

*Lewis v. State*, 898 N.E.2d 429, 431-21 (Ind. Ct. App. 2008) (citations omitted), trans. denied (2009) ("Lewis II").

On appeal from the denial of post-conviction relief, the Indiana Court of Appeals further provided:

> Lewis's first trial ended in a hung jury. At his second trial, the jury found Lewis not guilty of theft but otherwise guilty as charged. He appealed. We reversed Lewis's convictions because we concluded that the trial court erred in allowing the State to reopen its case during closing arguments to present additional evidence. *Lewis v. State,* No. 49A02–0610–CR–921, slip op. at 2–4 (Ind.Ct.App. Apr. 24, 2007), *trans. denied* (" *Lewis I* ").
>
> A third trial was held. Even though Lewis had been acquitted of the theft count in the second trial, the State presented that count to the jury. The jury found Lewis guilty as charged. Lewis pled guilty to being a habitual offender. At sentencing, the trial court recognized that Lewis had been previously acquitted of the theft charge and dismissed it. The trial court merged the class C felony burglary count with the class B felony burglary count and the criminal recklessness count with the class B felony robbery count. The trial court sentenced Lewis for his convictions of class B felony burglary and class B felony robbery and for being a habitual offender to an aggregate term of forty-five years.
>
> Lewis appealed his convictions. He asserted that the trial court abused its discretion in admitting identification evidence consisting of photo arrays and in refusing to give his tendered jury instructions regarding eyewitness credibility and that the evidence was insufficient to establish the bodily injury element necessary for the enhancement of his robbery conviction to a class B felony. We affirmed. *Lewis II,* 898 N.E.2d at 435.
>
> Lewis filed a PCR petition, arguing that he received ineffective assistance of trial and appellate counsel. Following a hearing, the postconviction court issued an order ("PCR Order") denying his petition.

*Lewis v. State*, 16 N.E.3d 1040 (Ind. Ct. App. 2014).

After the Indiana Court of Appeals affirmed the denial of post-conviction relief, Lewis sought transfer to the Indiana Supreme Court. (DE 11-11.) The Indiana Supreme court denied transfer on October 16, 2014. (DE 11-3.) Lewis filed a petition for writ of habeas corpus here, alleging his trial and appellate counsel provided him with ineffective assistance. (DE 1.)

3

II.     ANALYSIS

Lewis's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent

4

but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet, and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). Instead, to obtain relief, a petitioner must show the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

    A.    <u>Ineffective Assistance of Counsel</u>

Lewis asserts that his trial and appellate counsel were ineffective for various reasons. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 131 S. Ct. at 788. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; "the question is not whether counsel's actions were reasonable. The question is

5

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Furthermore, the court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011). "[C]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted). Where the defendant wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. A claim of ineffective assistance of appellate counsel is also

6

subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000).[1]

This court's review of the state court's application of *Strickland* is not *de novo*. Because Lewis's ineffective assistance of counsel claims were rejected in state court, the question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable, a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (*quoting Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (*citing Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). This creates a "doubly deferential" standard of review here. *Id.* With these principles in mind, each of Lewis's claims will be examined.

### 1. Trial Counsel was Not Ineffective for Not Moving For Dismissal on Double Jeopardy Grounds

Lewis claims that the Indiana Court of Appeals improperly held that his counsel was not ineffective for failing to move to dismiss the theft charge on double jeopardy grounds. The respondent points out that both the post-conviction court and Indiana Court of Appeals found

---

[1]On the deficiency prong, "[w]hen a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel, however, is not required to argue every nonfrivolous issue; rather, counsel is entitled to, and should, select for argument the strongest issues while omitting the rest. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005) (citing *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003)). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790. Where the underlying argument has no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

7

that there was no resulting prejudice. The courts held that, even though Lewis was charged again with theft in the third trial, the trial court did not enter a judgment of conviction or impose a sentence on the theft charge following the third trial. (DE 11-10 at 7-9). Thus, the courts reasoned there could be no resulting prejudice.

Nevertheless, Lewis asserts that the acquitted theft charge was "inherent in the underlying felony for the robbery and burglary charges." (DE 1 at 3.) The Indiana Court of Appeals disagreed and noted that the charging information "show[ed] that the theft of which he was acquitted was not the theft underlying the burglary and robbery charges." (DE 11-10 at 8.) The court of appeals held that the charged thefts underlying the burglary and robbery convictions were different than the acquitted theft charge.

In the second trial, Lewis was acquitted of exerting unauthorized control over Demichieli's property. The burglary and robbery charges Lewis was convicted of in the third trial were not based solely on Demichieli's property but also on Engelking's property. Thus, the jury could have, and likely did, find that Lewis took Engelking's property. Based on the record, the state court's resolution of this claim was not objectively unreasonable.

In his traverse, Lewis claims that the court of appeals' conclusion that the jury could have found that the tools belonged to Engelking was an unreasonable determination of the facts. Lewis claims there is "no record evidence that Engelking owned any of the tools or equipment in question. However, the trial transcript belies Lewis's argument. Throughout the trial, Engelking testified that his belongings were taken by Lewis. At one point, he testified that when he confronted Lewis, he told Lewis that, "he had sole my stuff." (Tr. Vol. I. at 39.) Engelking also identified a drill hammer and a chainsaw "was mine" and testified that what Lewis took were

8

"my tools." (Id. at 41, 43.) And, when asked why he didn't run away after being punched by Lewis, Engelking stated, "I wasn't about to let him have my tools." (Id. at 46.) These facts in the record allowed the Indiana Court of Appeals to reasonably conclude that a jury could find that Lewis stole property belonging to Engelking. Therefore, this is not a basis for habeas relief.

### 2. Trial Counsel was Not Ineffective for Not Objecting to Admission of Alleged Perjured Testimony

Next, Lewis claims the Indiana Court of Appeals improperly held that his counsel was not ineffective for failing to object to the admission of alleged perjured testimony. Specifically, Lewis complains that his trial counsel did not object when Engelking gave a slightly different version of events at his third trial than the did at the second trial. In response, the respondent argues that this claim is procedurally defaulted.

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those

9

courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

The Indiana Court of Appeals held that Lewis had defaulted on this claim by failing to present a cogent argument pursuant to Indiana Appellate Rule 46(A)(8)(a).

> Without citation to the record, Lewis avers that at the first trial Engelking testified only that he saw a man standing outside the back fence. Lewis states that at the second trial, the prosecutor asked Engelking if he saw Lewis crawling under the fence, and that trial counsel "failed to object to [this] leading question." *Id.* at 7. Lewis then states that at the third trial, "Engelking again testified that he saw Lewis crawling under the fence into the alley." *Id.* at 8. Other than arguing that Engelking's testimony had changed, Lewis fails to provide a cogent argument or citation to the Indiana Rules of Evidence as a basis for an objection to Engelking's testimony at the third trial. Accordingly, this argument is waived. See Ind. Appellate Rule 46(A)(8)(a) (requiring that argument be supported by cogent reasoning with citations to authority); Cooper v. State, 853 N.E.2d 831, 835, n.1 (Ind. 2006).

(DE 11-10 at 10.)

The Indiana Court of Appeals having disposed of Lewis's claim on an adequate and independent state ground that blocks federal review. *Coleman*, 501 U.S. at 735; *Szabo v. Walls*, 313 F.3d 392 (7th Cir. 2002). As such, this claim is procedurally defaulted.[2]

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his

---

[2]Notably, he has failed to present a cogent argument here, too.

10

constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Lewis does not attempt to show cause or prejudice.

A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Id.*, and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324. Lewis does not attempt to establish that any such fundamental miscarriage of justice would occur. As a result, Lewis cannot excuse his default and habeas review is precluded on this claim.

> 3. Trial and Appellate Counsel were Not Ineffective
> for Failing to Object to the Trial Court's Elevation
> of the Robbery Charge Due to Engelking Being Punched

Lewis contends that the Indiana Court of Appeals improperly held that his trial and appellate counsel were not ineffective for failing to object to the elevation of the robbery charge

11

to a Class B felony on the ground that the State failed to produce any evidence that Engelking had suffered any physical impairment. As a threshold matter, the State was not required to prove that Engelking suffered a physical impairment; the State only needed to show that Engelking suffered bodily injury. *See Lewis*, 898 N.E.2d at 434, 435 (statutory citations omitted); *See also Young v. State*, 725 N.E.2d 78, 81, 82 (Ind. 2000).

On direct appeal, the Indiana Court of Appeals found that Lewis punched Engelking with his fist and the punch was "pretty hard" and that "it didn't feel good." (DE 11-12 at 7.) As a result, the court held that Engelking suffered bodily injury sufficient to support Lewis's conviction for Class B felony robbery. *Id.* Therefore, had trial counsel or appellate raised such an objection, it would have been overruled. Counsel cannot be found ineffective for failing to raise meritless claims. *United States v. Stewart,* 388 F.3d 1079, 1085 (7th Cir. 2004); *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). Accordingly, the Indiana Court of Appeals' holding that neither the trial nor appellate counsel were ineffective for not objecting to the robbery on the basis of a lack of physical impairment was not only reasonable, but a correct application of clearly established federal law.

### 4. Trial Counsel was Not Ineffective for Failing to Object to Improper Identification Process

Lewis claims that the Indiana Court of Appeals improperly held that his trial counsel was not ineffective for failing to object when the State had used improper and prejudicial identification before and during trial, which resulted in mistaken identification. Although not entirely clear, it seems as though Lewis is reasserting his claims on post conviction review where he argued, "that trial counsel should have objected to the photo array shown to Engelking on the basis that it contained only six men and that he had already been informed that the perpetrator

had been arrested." (DE 11-10 at 12.) The Indiana Court of Appeals found the claim to be without merit. It stated: "[w]e are unpersuaded that an objection to the photo array on the basis now advanced would have been sustained. *See Gambill v. State*, 436 N.E.2d 301, 303 (Ind. 1983) ("It is inevitable that a witness may know that the police have a suspect when he is asked to view a 'line up' or limited photographic array." (Id.)

Similarly, with regard to the in-court identification, Lewis argued that "the in-court identification of [him] lacked sufficient independent reliability" to be admissible. (DE 11-10 at 12.) The Indiana Court of Appeals disagreed and noted "that during the commission of the offenses, Engelking was close enough to Lewis to tap him on the shoulder and carry on a conversation. (Id.) Thus, the court "was unpersuaded that Engelking's in-court identification of Lewis lacked sufficient independent reliability.

The Indiana Court of Appeals' decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Because the Indiana Court of Appeals found any such objection to Lewis's identification would be without merit, the Indiana Court of Appeals correctly determined that counsel cannot be deemed ineffective for not pursuing that argument. *Stewart*, 388 F.3d at 1085. Therefore, this claim cannot provide habeas relief.

B.  Certification of Appealability

As a final matter, pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a

substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, one of Lewis's claims is procedurally defaulted, and he has not provided any meritorious basis for excusing his default. As to his other claims, Lewis has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue Lewis a certificate of appealability.

III.  CONCLUSION

For the reasons set forth above, the court:

(1) **DENIES** the petition (DE 1); and

(2) **DENIES** the petitioner a certificate of appealability.

**SO ORDERED** on July 19, 2016.

  s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge  
Hammond Division